# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNUM LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>MICHAEL J. GROURKE, JR.,<br><br>　　　　Defendant. | CIVIL ACTION NO. 3:04-CV-1639<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is Plaintiff UNUM Life Insurance Company of America's Motion For Summary Judgment (Doc. 13). For the reasons set forth below, the Court will deny UNUM's motion. The Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

## BACKGROUND

The facts in the present case are relatively undisputed. Michael J. Grourke, Jr. began employment with Honeywell, Inc. on January 29, 1962. On or about January 1, 1995, Mr. Grourke became a participant in a fully-insured employee benefit welfare plan under Group Long-Term Disability Insurance Policy No. 392237 ("Plan") issued to Honeywell, Inc. by UNUM Life Insurance Company of America ("UNUM"). The Plan is subject to the provisions of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").

On November 14, 1997, Mr. Grourke ceased working due to injuries affecting his knee and back. He submitted a claim for long-term disability benefits to UNUM under the

1

Plan on or about April 14, 1998.  Mr. Grourke's claim was approved, and he began receiving monthly disability benefits retroactive to May 14, 1998.  Under the Plan, any long-term disability benefits paid out are to be offset by other benefits received by the insured.  Specifically, the Plan provides that UNUM will "subtract from [the insured's] gross disability payment . . . the amount that [the insured is] entitled to receive as disability payments . . . under the United States Social Security Act."  (Doc. 13, Ex. A at LTD-BEN-3.)  Further, the Plan provides that once it is determined that the insured may qualify for Social Security benefits, UNUM "will estimate [the insured's] entitlement to these benefits . . ." unless the insured ". . . sign[s] . . .[a] payment option form . . . stating that [the insured] promise[s] to pay any overpayment caused by an award."  *Id.* at LTD-BEN-5.  Mr. Grourke does not deny signing the Payment Option Form ("POF"), but states that he did not designate either of the two payment options in the POF.  Mr. Grourke asserts that, furthermore, he was not requested to sign the POF until May of 1999, and that he was told his disability benefits from UNUM would immediately cease if he failed to sign the form.

Then, on or about September 19, 2000, UNUM ceased making disability payments to Mr. Grourke on the basis that he was no longer disabled.   At that point, Mr. Grourke had received a total of $64, 896.20 in benefits from UNUM between May 14, 1998 and September 18, 2000; without a reduction in monthly payments based upon Mr. Grourke's potential Social Security benefits.  Thereafter, Mr. Grourke retroactively received $48,700.17 in benefits from Social Security for his period of disability between May 14, 1998 to September 18, 2000.  Mr. Grourke admits that he has never paid UNUM any portion of the alleged overpayment of disability benefits.

2

UNUM filed suit to recover the alleged overpayment of disability benefits on July 26, 2004. (Doc. 1.) On May 25, 2005, UNUM filed the present motion for summary judgment. (Doc. 13.) This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1.    "Equitable Relief" Under 29 U.S.C. § 1132(a)(3)(B)**

UNUM first claims that it is entitled to equitable restitution under ERISA's civil enforcement mechanism, 29 U.S.C. § 1132(a)(3), which is available to plan fiduciaries. Section 1132(a) provides:

> A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

4

29 U.S.C. § 1132(a) (2005) (emphasis added).  The Supreme Court has made it clear that the term "equitable relief" in § 1132(a)(3)(B) refers only to "those categories of relief that were *typically* available in equity."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)) (emphasis in original).  Furthermore, determining that "not all relief falling under the rubric of restitution is available in equity," the Supreme Court distinguished between legal and equitable restitution in *Knudson*.  *Id.* at 212-13.  The Supreme Court stated:

> In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit.  In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money."  Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

*Id*. at 213 (citations omitted).  The Supreme Court went on to explain:

> In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.  A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.  But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]."  Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability

> on the defendant, but to restore to the plaintiff particular
> funds or property in the defendant's possession.

*Id*. at 213-14 (citations omitted) (alterations in original).

Following the Supreme Court's decision in *Knudson*, a split among the circuits has developed over how to determine the true nature of restitution sought in an ERISA action. In the minority view, the United States Courts of Appeals for the Sixth and Ninth Circuits have read *Knudso*n to establish a broad prohibition under § 1132(a)(3)(B) on claims for restitution derived from the provisions of ERISA plans. *See, e.g., Qualchoice, Inc. v. Rowland*, 367 F.3d 638, 650 (6th Cir. 2004), *cert. denied*, _ U.S. _, 125 S. Ct. 1639 (Mar. 21, 2005). For the Sixth and Ninth Circuits, "the fact that the . . . claim originates in the plan's contract and seeks monetary damages is entirely determinative of whether the [plaintiff] is seeking relief that is permissible" under § 1132(a)(3)(B). *Scholastic Corp. v. Kassem*, 389 F. Supp. 2d 402, 409 (D. Conn. 2005). Conversely, the United States Courts of Appeals for the Fourth, Fifth, Seventh, and Tenth Circuits have construed the Court's holding in *Knudson* narrowly. *See, e.g., Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansborough*, 354 F.3d 348, 356 (5th Cir. 2003), *cert. denied*, 541 U.S. 1072 (2004); *see also Eldridge v. Wachovia Corp. Long-Term Disability Plan*, 383 F. Supp. 2d 1367, 1371 (N.D. Ga. 2005) (outlining the circuit split). These circuits apply a three-part test for determining whether the remedy sought by a plan, or plan fiduciary, is typically equitable. The Fifth Circuit in *Bombardier* summarized the test as follows: "Does the Plan seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant beneficiary?" *Bombardier*, 354 F.3d

at 356.

The United States Court of Appeals for the Third Circuit has not definitively spoken on its interpretation of the holding in *Knudson*, however, it appears likely that the Court of Appeals will adopt the majority's three-part test. Notably, the Court of Appeals for the Third Circuit seems to have embraced the majority view in some of its unpublished opinions. *See, e.g., Michaels v. Michaels v. Breedlove*, No. 03-4891, 2004 U.S. App. LEXIS 25165, *5-6 (3d Cir. Dec. 8, 2004) (distinguishing impermissible legal restitution from equitable restitution seeking recovery of money or property which "could clearly be traced to particular funds or property in the defendant's possession") (quoting *Knudson*, 534 U.S. at 213); *Sackman v. Teaneck Nursing Ctr.*, 86 Fed. Appx. 483, 485 (3d Cir. 2003) (determining that the plaintiffs sought to impose an impermissible form of personal liability, as they failed to identify a specific block of money that passed from the fund to the defendants). In addition, the United States District Court for the Eastern District of Pennsylvania adopted the majority view, in *Godshall v. Franklin Mint Co.*, 285 F. Supp. 2d 628 (E.D. Pa. 2003).

Even under the more lenient approach, however, a claim for equitable restitution must seek specifically identifiable property that is within the control or possession of the defendant. Notably, district courts have disagreed on what constitutes identifiable funds. The United States District Court for the Northern District of Georgia has stated that, "[w]here the subject proceeds have been received by a party and placed into that party's checking or savings account, rather than segregated into an identifiable fund or location, the funds are not 'specifically identifiable' for purposes of [ § 1132(a)(3)(B) ]." *Eldridge,*

383 F. Supp. 2d at 1372 (citing *BlueCross BlueShield of South Carolina v. Carillo*, 372 F. Supp. 2d 628, 638 (N.D. Ga. 2005)).  In contrast, the United States District Court for the Southern District of Florida, in *Fink v. metropolitan Life Ins. Co.*, 320 F. Supp. 2d 1314, determined that benefits received by the plaintiff from social security were "identified and able to be traced to social security benefit payments," and, therefore, the plan was entitled to raise a claim for overpayment of disability benefits under ERISA.  *Fink*, 320 F. Supp. 2d at 1317.  The Court need not determine, however, whether the alleged overpayment sought by UNUM is "identifiable", because UNUM has not submitted any evidence that the benefits provided to Mr. Grourke remain in his possession.  *See Knudson*, 534 U.S. at 213-14 ("But where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'")(quoting RESTATEMENT OF RESTITUTION § 215, cmt. a, at 867 (1936)).

Instead, UNUM argues that it is entitled to equitable relief in the form of specific performance of its "contract" with Mr. Grourke.  UNUM argues that because it will suffer significant future losses, as it will be forced to forego the recoupment of such outstanding overpayments not only from Mr. Grourke but from similarly situated defendants, it is entitled to specific performance of its "contract" with Mr. Grourke.  The Court finds this argument unpersuasive and, because specific performance for the payment of money was typically not available in equity, UNUM is not entitled under § 1132(a)(3)(B) to

specific performance. *See Knudson*, 534 U.S. at 210-11.[1] Therefore, UNUM has failed to demonstrate that it is entitled to equitable relief under § 1132(a)(3)(B) of ERISA, and UNUM's motion for summary judgment will be denied with respect to this claim.

**2.      Federal Common Law Claim for Equitable Restitution**

UNUM, next, asks the Court to permit recovery pursuant to a claim for equitable restitution under federal common law.[2] Federal courts may create and apply federal common law when necessary to fill in gaps or interstices in ERISA. *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1186 (3d Cir. 1991). However, ERISA is also a "'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Knudson*, 534 U.S. at 209 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 251(1993) (quoting

---

[1]   As the Supreme Court explained in *Knudson*:

> Those rare cases in which a court of equity would decree specific performance of a contract to transfer funds were suits that, unlike the present case, sought to prevent future losses that were either incalculable or would be greater than the sum awarded. For example, specific performance might be available to enforce an agreement to lend money when the unavailability of alternative financing would leave the plaintiff with injuries that are difficult to value; or to enforce an obligor's duty to make future monthly payments, after the obligor had consistently refused to make past payments concededly due, and thus threatened the obligee with the burden of bringing multiple damages actions. Typically, however, specific performance of a contract to pay money was not available in equity.

*Knudson*, 534 U.S. at 210-11 (internal citations and quotations omitted).

[2]   A claim for common law "equitable restitution" is also referred to as a claim for "unjust enrichment."

*Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361(1980))). As such, the Supreme Court has been unequivocal in its warning that courts should be "especially reluctant to tamper with [the] enforcement scheme embodied in the [ERISA] statute by extending remedies not specifically authorized by its text." *Id.* (internal quotation omitted). Therefore, when creating additional ERISA rights under federal common law, the inquiry begins with whether the judicial creation of a right is necessary to fill in a gap or otherwise effectuate the statutory pattern of ERISA. *Plucinski v. I.A.M. National Pension Fund*, 875 F.2d 1052, 1056 (3d Cir. 1989). The Court then asks whether the particular cause of action furthers the purpose of ERISA. *Id.* at 1057.

Neither the Supreme Court nor the United States Court of Appeals for the Third Circuit has ruled specifically on whether a claim for unjust enrichment unauthorized under § 1132(a)(3)(B) may be asserted under federal common law. As with claims for equitable restitution under § 1132(a)(3)(B), there exists a split among the circuits as to whether a federal common law claim for unjust enrichment is appropriate following the Supreme Court's decisions in *Mertens* and *Knudson*.

In determining whether a federal common law claim of unjust enrichment is appropriate in the present suit, the Court begins by looking to the pre-*Knudson* authorities in the Third Circuit. Beginning with *Plucinski*, the United States Court of Appeals for the Third Circuit recognized a federal common law cause of action for employers to seek restitution of mistakenly paid contributions to an employee benefit fund. *Plucinski*, 875 F.2d at 1057-58. Although ERISA does not provide expressly for such a claim, the Court of Appeals inferred its authority to develop a federal common law cause of action for

10

employers from the permissive language of ERISA in § 1103(c)(2)(A)(ii).  *Id*. at 1054-55, 1058.

Next, in *Luby*, the Court of Appeals for the Third Circuit expanded the scope of its federal common law of unjust enrichment to recognize an action by an ERISA fund for recovery of mistaken payments made to third parties.  *Luby*, 944 F.2d at 1186.  The Court of Appeals based its decision to expand the cause of action on its previous "recognition in *Plucinski* that *employers* are entitled to restitution."  *Id.* (emphasis in original).

Then, in *Travitz v. Northeast Dept. ILGWU Health and Welfare Fund*, 818 F. Supp. 761 (M.D. Pa. 1993), *aff'd*, 13 F.3d 704 (3d Cir. 1994), *cert. denied*, 511 U.S. 1143 (1994), the Court adopted the approach taken in *Provident Life & Accident Insurance Company v. Waller*, 906 F.2d 985 (4th Cir. 1990).  In *Waller*, the plan administrator asserted a claim of unjust enrichment against a beneficiary seeking to recover benefit overpayments, after the beneficiary received settlement funds from a third-party tortfeasor.  *Provident*, 906 F.2d at 986-88.  The Court of Appeals for the Fourth Circuit recognized the claim, determining that "fashioning a federal common law rule of unjust enrichment [was] appropriate" based on the circumstances of the case, the plan contract, and the statutory policies of ERISA*.  Id.* at 993.

UNUM relies on these cases to establish the existence of a federal common law cause of action for unjust enrichment in the Third Circuit, and points to *Empire Kosher Poultry, Inc. v. United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania*, 285 F. Supp. 2d 573, (M.D. Pa. 2003) in support of its

11

proposition that a federal common law claim of unjust enrichment brought by a plan fiduciary is viable post-*Knudson*.  In *Empire Kosher*, this Court determined that "[t]he analysis of [*Knudson*] is simply inapplicable to the federal common law claim of equitable restitution" brought by an employer, as the "statutory language of § 1132(a)(3) that drove the Supreme Court's decision has no relationship to common law restitution, which the Third Circuit developed from broad equitable principles underlying ERISA and *the permissive language of § 1103(c).*"  *Id.* at 580-81 (emphasis added).  The Court need not address whether *Empire Kosher* correctly determined that a federal common law claim of unjust enrichment brought by an *employer* in an ERISA action is unaffected by the Supreme Court's decision in *Knudson*.  However, for the following reasons, the Court finds that a federal common law claim for unjust enrichment brought by a *plan fiduciary* is inappropriate given the Supreme Court's decisions in *Mertens* and *Knudson*. Specifically, the Court is persuaded that there is no "gap" in the text of ERISA that would warrant the application of federal common law for an action brought by a plan fiduciary.

The Supreme Court's decisions in *Mertens* and *Knudson* explain in great detail that Congress, in drafting § 1132(a)(3)(B) to allow only "equitable relief," specifically contemplated the possibility of extending to plan fiduciaries a right to sue a plan participant for money damages, but chose instead to limit fiduciaries' remedies to those typically available in equity.  Therefore, because ERISA's text addresses the present issue before the Court, there is no "gap" in ERISA on this question of whether UNUM may recover legal restitution from Mr. Grourke, and no basis for granting UNUM a federal common law remedy. This determination is supported by recent decisions in various

circuits.

Foremost, the United States Courts of Appeals for the Fifth, Sixth, Eighth, and Ninth Circuits have each held that it is inappropriate to create a federal common law remedy of unjust enrichment in actions brought under ERISA.  *See N. Am. Coal Corp. Ret. Sav. Plan v. Roth*, 395 F.3d 916, 917 (8th Cir. 2005) ("[B]ecause there is no gap in ERISA's text regarding a fiduciary's right to bring a civil action for legal remedies to enforce plan terms or ERISA provisions, a federal common law remedy cannot be recognized."); *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 335 (5th Cir. 2004) ("As ERISA's text specifically and clearly addresses the issue now before us, there is no 'gap' in that text that would warrant our application of federal common law.  We thus hold that ERISA plan fiduciaries do not have a federal common law right to sue a beneficiary for legal (as distinct from equitable) relief on a theory of unjust enrichment or restitution."); *Qualchoice*, 367 F.3d at 642 (noting that the Supreme Court's intervening opinions, including *Knudson*, compelled it to "abandon" its prior position that federal common law provided a basis for a fiduciary's reimbursement claim); *Pacificare Inc. v. Martin*, 34 F.3d 834, 836 (9th Cir. 1994) ("[T]he Ninth Circuit has expressly refused to create federal common law causes of action under ERISA.").  In addition, the Court of Appeals for the Eleventh Circuit "has not ruled on this particular issue, but has indicated an unwillingness to extend the remedies provided for in ERISA."  *Space Gateway Support v. Prieth*, 371 F. Supp. 2d 1364, 1369 (M.D. Fla. 2005) (declining to recognize a federal common law claim for unjust enrichment by plan fiduciary).

Furthermore, the Court agrees with its sister court in the Western District of

Pennsylvania that the continuing vitality of the Third Circuit's decision in *Luby,* extending the federal common law cause of action of unjust enrichment from employers to the fund itself, is in question given the intervening Supreme Court cases.  *See Kaliszewski v. Sheet Metal Workers' Nat'l Pension Fund*, No. 03-216E, 2005 U.S. Dist. LEXIS 23059, at *26 (W.D. Pa. July 19, 2005).  The Court is persuaded to this end by the Fifth Circuit's opinion in *Ogden*.  There, the Fifth Circuit distinguished its earlier decision in *Jamail v. Carpenters District Council of Houston Pension & Welfare Trusts*, 954 F.2d 299 (5th Cir. 1992), which recognized an employer's federal common law claim to unjust enrichment, and refused to extend the federal common law cause of action of unjust enrichment to plan fiduciaries.  The Fifth Circuirt explained:

> In Jamail, we were faced with an actual gap in ERISA's text which makes no mention of employers.  We could not, therefore, point to precise language in ERISA's text demonstrating that, either expressly or implicitly, Congress had proscribed the kind of relief that the employer plaintiff sought.  As ERISA's text did not specifically and clearly address whether an employer had a right to recoup mistakenly paid contributions from the plan, and as creation of such a remedy was compatible with the policies of ERISA, the Jamail panel did not have to "rewrite" ERISA to grant the employer a federal common law right of restitution against the plan.  Jamail thus has no bearing on our refusal today to create a federal common law right of unjust enrichment that would allow a plan fiduciary to assert an action for legal relief against a participant, both parties being members of categories expressly identified [in ERISA].

*Ogden,* 367 F.3d at 333.

Finally, the Court is also persuaded by the Court of Appeals for the Fourth Circuit's decision, in *Provident Life and Accident Ins. Co. v. Cohen*, 423 F.3d 413 (4th Cir. 2005),

to significantly narrow its previous recognition of a federal common law remedy for unjust enrichment following *Knudson. See id.* at 426. In *Cohen*, the Fourth Circuit refused to allow a plan fiduciary to seek a federal common law remedy for unjust enrichment to recover disability benefits paid to a plan participant. *Id.* at 423-26. However, because the court had previously recognized a federal common law cause of action for unjust enrichment in *Waller*, it distinguished the two cases and limited the federal common law cause of action for unjust enrichment to cases where recognition of the claim would further the language of the Plan. *Id.* at 426 ("Because one panel may not overrule another panel . . . we must consider whether this case falls within the limited circumstance in which this court recognized a federal common law unjust enrichment claim in *Waller*. We conclude that this case is not within *Waller*'s sweep."). The Fourth Circuit further explained its decision to limit the federal common law cause of action, stating:

> Certainly, we do not want to condone [the defendant's] intentionally misleading conduct in this case. However, we cannot ignore ERISA's proscription of the type of relief sought by [the plaintiff] and permit a federal common law remedy for unjust enrichment. That is, we cannot afford [a plan fiduciary] the right to do that which it cannot do under ERISA. It is simply not within the court's purview to decide the proper balance of rights and remedies under ERISA.

*Id*.

In determining that UNUM is not entitled to bring a federal common law cause of action, this Court, like the Fourth Circuit, is mindful of UNUM's suggestion that declining to extend a federal common law cause of action for unjust enrichment to plan fiduciaries will have negative policy implications. Further, the Court is aware that other district courts

15

have cited similar policy considerations in recognizing a federal common law claim for unjust enrichment to recover overpayments made in circumstances similar to the present case. *See, e.g., Unum Life Ins. Co. of Am. v. O'Brien*, No. 03-1433-Orl-18DAB, 2004 U.S. Dist. LEXIS 20761, at *13-15 (M.D. Fla. October 4, 2004) (persuaded to recognize a federal common law cause of action, in part, by the Fourth Circuit's reasoning in *Waller*); *UNUM Life Ins. Co. of Am. v. Long*, 227 F. Supp. 2d 609, 613-15 (N.D. Tex. 2002). However, the Supreme Court has been clear that "the authority of courts to develop a 'federal common law' under ERISA is not the authority to revise the text of the statute." *Mertens*, 508 U.S. at 259 (internal citations omitted). Indeed, the Supreme Court has emphasized that ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* at 254 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-147 (1985)) (emphasis in original). As such, the Court is not at liberty to circumvent the restrictions established by Congress, in drafting § 1132(a)(3)(B) to allow only "equitable relief", by providing plan fiduciaries with a federal common law cause of action for unjust enrichment. ERISA's text specifically addresses, and limits, UNUM's right to recover the overpayment it seeks. Since there is no "gap" in ERISA on this question, establishing a federal common law cause of action is beyond the purview of the Court.

## CONCLUSION

The Supreme Court, in *Knudson*, made it clear that the term "equitable relief" in § 1132(a)(3)(B) refers only to "those categories of relief that were *typically* available in

equity." *Id.* at 210.  Even under the more lenient interpretation of the holding in *Knudson*, a claim for equitable restitution must seek specifically identifiable property that is within the control or possession of the defendant.  In the present case, UNUM has not submitted any evidence that the benefits provided to Mr. Grourke remain in his possession.  Moreover, UNUM is not entitled to the equitable remedy of specific performance of its "contract" with Mr. Grourke, as specific performance was not typically available in equity.  As such, UNUM has not demonstrated that it is entitled to equitable relief under § 1132(a)(3)(B) of ERISA.

Further, the Supreme Court's decisions in *Mertens* and *Knudson* explain in great detail that Congress, in drafting § 1132(a)(3)(B) to allow only "equitable relief", specifically contemplated the possibility of extending to plan fiduciaries a right to sue a participant for money damages, but chose instead to limit fiduciaries' remedies to those typically available in equity.  Therefore, because ERISA's text addresses the present issue before the Court, there is no "gap" in ERISA on this question and no basis for granting UNUM a federal common law remedy.  The Court is persuaded to this end by the reasoning of the United States Courts of Appeals for the Fifth, Sixth, Eighth, and Ninth Circuits, as well as the United States District Courts for the Middle District of Florida and Western District of Pennsylvania; determining it is inappropriate to create a federal common law remedy of unjust enrichment in ERISA actions brought by plan fiduciaries seeking legal restitution. Furthermore, the Court is persuaded by the decision of the Court of Appeals for the Fourth Circuit, in *Cohen*, to significantly narrow its previous recognition of a federal common law remedy for unjust enrichment.

UNUM, therefore, has not demonstrated a claim for "equitable relief" under 29

U.S.C. § 1132(a)(3), and the Court is not at liberty to grant UNUM a federal common law remedy.  As such, Plaintiff UNUM Life Insurance Company of America's Motion For Summary Judgment (Doc. 13) will be denied.  Unless UNUM can subsequently demonstrate that it is entitled to "equitable relief" under § 1132(a)(3), it appears UNUM will be unable to recoup the overpayment of benefits made to Mr. Grourke.

An appropriate Order will follow.


 December 20, 2005                                       /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. GROURKE, JR.,<br><br>Defendant. | CIVIL ACTION NO. 3:04-CV-1639<br><br>(JUDGE CAPUTO) |

## **ORDER**

**NOW**, this   20th   day of December, 2005, **IT IS HEREBY ORDERED** that Plaintiff UNUM Life Insurance Company of America's Motion For Summary Judgment (Doc. 13) is **DENIED**.

                                                            /s/ A. Richard Caputo
                                                            A. Richard Caputo
                                                             United States District Judge